## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **MARY OGUNTODU** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Cause No. 7:21-cv-00011-O** |
| | § | |
| **KARA PAINTER, ET AL.,** | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

---

## DEFENDANTS PAINTER AND PETERSON'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General For
Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

**BRUCE R. GARCIA\***
Assistant Attorney General
Attorney-in-charge
State Bar No. 07631060
Bruce.Garcia@oag.texas.gov

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**\*ATTORNEY OF RECORD – COUNSEL FOR DEFENDANTS**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................iii
STATEMENT OF THE CASE.......................................................................................1
MOTION FOR SUMMARY JUDGMENT.....................................................................2
RELEVANT MATERIAL FACTS.................................................................................2
ISSUES OF LAW.........................................................................................................4
ARGUMENT................................................................................................................4
   A. Summary Judgment Standard ...........................................................................4
   B.   Qualified Immunity Standard ........................................................................7
     I.   There Are No Genuine Issues of Material Fact to Support Plaintiff's Deliberate
     Indifference Claim Under 42 U.S.C. § 1983....................................................9
        a. Unlike the Defendants in *Boyd*, there is no competent summary judgment
           evidence that Defendants Painter or Peterson were subjectively aware of a serious
           risk to Oguntodu's health or safety under the deliberate indifference stan..........11
CONCLUSION.............................................................................................................16
NOTICE OF ELECTRONIC FILING ..........................................................................17
CERTIFICATE OF SERVICE .....................................................................................188

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Creighton*,
   483 U.S. 635 (1987)..................................................................................................8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................8

*Brown v. Callahan*,
   623 F.3d 249 (5th Cir. 2010) .............................................................................6, 8

*Celotex Corp.v. Catrett*,
   477 U.S. 317 (1986)..............................................................................................5, 6

*Domino v. Texas Dep't of Criminal Justice*,
   239 F.3d 752 (5th Cir. 2001) ...........................................................................9, 15

*Duffie v. United States*,
   600 F.3d 362 (5th Cir. 2010) ...................................................................................6

*E.E.O.C. v. Brown & Root, Inc.*,
   688 F.2d 338 (5th Cir. 1982) ...................................................................................5

*Exxon Corp. v. Baton Rouge Oil*,
   77 F.3d 850 (5th Cir. 1996) .....................................................................................6

*Farmer v. Brennan*,
   511 U.S. 825 (1994)............................................................................................9, 10

*Fields v. City of South Houston, Texas*,
   922 F.2d 1183 (5th Cir. 1991) .................................................................................4

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994) ...................................................................................6

*Fraire v. City of Arlington*,
   957 F.2d 1268 (5th Cir. 1992) .................................................................................5

*Gobert v. Caldwell*,
   463 F.3d 339 (5th Cir. 2006) ...................................................................................9

*Hall v. Thomas*,
   190 F.3d 693 (5th Cir. 1999) ...................................................................................9

*Hans v. Transcontinental Gas Pipe Line Corp.*,
   953 F.2d 996 (5th Cir. 1992) ...................................................................................5

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)..................................................................................................7

*Hector v. Thaler*,
   927 S.W.2d 95 (Tex. App.—Houston [1st Dist.] 1996, writ denied .......................14

*Hernandez v. Estelle*,
   788 F.2d 1154 (5th Cir. 1986) ...............................................................................14

*Hope v. Pelzer,*
 536 U.S. 730 (2002) .................................................................................................... 7
*Jackson v. Cain,*
 864 F.2d 1235 (5th Cir. 1989) ................................................................................. 14
*Kovacic v. Villarreal,*
 628 F.3d 209 (5th Cir. 2010) ..................................................................................... 7
*Lawson v. Dallas Cnty.,*
 286 F.3d 257 (5th Cir. 2002) ..................................................................................... 9
*Little v. Liquid Air Corp.,*
 37 F.3d 1069 (5th Cir. 1994) ................................................................................. 5, 6
*Lodge Hall Music, Inc. v. Waco Wranglery Club, Inc.,*
 831 F.2d 77 (5th Cir. 1987) ....................................................................................... 4
*McCallum Highlands v. Washington Capital DUS, Inc.,*
 66 F.3d 89 (5th Cir. 1995) ......................................................................................... 6
*McClendon v. City of Columbia,*
 305 F.3d 314 (5th Cir. 2002) ..................................................................................... 7
*McCormick v. Stalder,*
 105 F.3d 1059 (5th Cir. 1999) ................................................................................... 9
*Mitchell v. Forsyth,*
 472 U.S. 511 (1985) .................................................................................................... 7
*Mouille v. City of Live Oak,*
 977 F.2d 924 (5th Cir. 1992) ..................................................................................... 8
*Mullenix v. Luna,*
 136 S. Ct. 305 (2015) .................................................................................................. 7
*Orthopedic & Sports Injury Clinic v. Wang,*
 922 F.2d 220 (5th Cir. 1991) ..................................................................................... 5
*Pearson v. Callahan,*
 555 U.S. 223 (2009) .................................................................................................... 7
*Reeves v. Collins,*
 27 F.3d 174 (5th Cir. 1994) ....................................................................................... 9
*Spann v. Rainey,*
 987 F.2d 1110 (5th Cir. 1993) ................................................................................... 8
*Stewart v. Murphy,*
 174 F.3d 530 (5th Cir. 1999) ................................................................................... 16
*Streetman v. Jordan,*
 918 F.2d 555 (5th Cir. 1990) ..................................................................................... 8
*Stults v. Conoco, Inc.,*
 76 F.3d 651 (5th Cir. 1996) ....................................................................................... 6
*Tacon Mechanical Contractors v. Aetna Casualty & Surety Co.,*
 65 F.3d 486 (5th Cir. 1995) ....................................................................................... 5
*Thompson v. Campos,*
 No. 16-11121, 691 F. App'x 193 (5th Cir. 2017) ............................................. 10, 13
*Thompson v.* TDCJ-ID,
 33 S.W.3d 412 (Tex. App.—Houston [1st Dist.] 2000) ......................................... 14

iv

*Tolan v Cotton,*
    134 S. Ct. 1861 (2014) ........................................................................................ 7
*Valencia v. Hicks,*
    981 F.2d 1440 (5th Cir.) .................................................................................... 8
*Wernecke v. Garcia,*
    591 F.3d 386 (5th Cir. 2009) ............................................................................. 8
*White v. Pauly,*
    137 S. Ct. 548 (2017) ........................................................................................ 8

Statutes

42 U.S.C. § 1983 ............................................................................................... passim

Rules

FED. R. CIV. P. 56(e) ...................................................................................... 4, 5
Federal Rule of Civil Procedure 56 ................................................................ 2, 4

Other Authorities

*Boyd v. Grooms*, Civil Action No. H-08-2371,
    2009 U.S. Dist. LEXIS 89693, at *1 (S.D. Tex. Sept. 29, 2009) ........................... 10

**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **MARY OGUNTODU** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Cause No. 7:21-cv-00011-O** |
| | § | |
| **KARA PAINTER, ET AL.,** | § | |
| *Defendants.* | § | |
| | § | |

---

**DEFENDANTS PAINTER AND PETERSON'S BRIEF IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Defendants Kara Painter and Cheteigra Peterson, by and through the Office of the Attorney General for the State of Texas and move for summary judgment on all claims brought against them by Plaintiff. In support of their motion, Defendants offer the following:

**I.**
**STATEMENT OF THE CASE**

This is a civil rights suit stemming from the death of Texas Department of Criminal Justice ("TDCJ") inmate, Joseph Oguntodu ("Oguntodu"). Oguntodu, who was serving a life sentence for capital murder, lived in the Expansion Cell Block (or ECB) of TDCJ's James A. Allred Unit. On March 7, 2019, Oguntodu was discovered nonresponsive in his cell. After responders were unable to resuscitate him Oguntodu was pronounced dead on the scene. Plaintiff contends that two TDCJ employees were deliberately indifferent to a serious risk of harm to Oguntodu's safety, resulting in his death.

Plaintiff specifically alleges that Defendants Painter and Peterson "knew of and disregarded an excessive risk to Mr. Oguntodu's health or safety." ECF No. 1 at 9 and 11. Plaintiff alleges that these acts or omissions violated decedent's rights secured by the Eighth Amendment.

Plaintiff seeks personal injury damages, pain and suffering, funeral and burial expenses, exemplary damages and attorney fees.

Defendants filed their Answer to Plaintiff's Complaint on May 1, 2021, asserting their entitlement to qualified immunity. ECF No. 7. Defendants now file this motion for summary judgement on the issue of qualified immunity, seeking to dismiss all claims against them in this suit.

## II.
## MOTION FOR SUMMARY JUDGMENT

Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in their favor on all of Plaintiff's claims. Plaintiff has presented no evidence supporting her assertion that Joseph Oguntodu's rights, as protected by the U.S. Constitution, were violated by Defendant Painter or Peterson. Therefore, there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law.

In support of their Motion for Summary Judgment, Defendants have attached the following evidence by reference to the Appendix to Defendants' Motion for Summary Judgment:

Defendants' Exhibit A:    Emergency Action Center Report No. I-03957-03-19-JA (App at 1-25)[1];

Defendants' Exhibit B:    Deposition Excerpts of Kara Painter (App. 25-40);

Defendants' Exhibit C:    TDCJ Surveillance Video D-pod.

## III.
## RELEVANT MATERIAL FACTS[2]

---

[1] Defendants are submitting the Incident Review findings, the various timelines compiled by Major Nicholas Flood, and the witness statements/interviews from Emergency Action Center report No. I-03957-03-19-JA. Defendants have withheld materials which they believe are irrelevant to the issue(s) before the Court. Defendants will immediately supplement with all withheld portions at the Courts request. Defendants have no objection to the Plaintiff supplementing any portions of the report.

[2] Defendants are accepting these facts as true for Summary Judgment purposes only, and expressly reserves the right to contest these facts at trial, if necessary.

On March 7, 2019, Joseph Oguntodu and Christopher De La Garza, both inmates in TDCJ's custody, were assigned to live together in Cell 2-22, D-Pod Expansion Cell Block (ECB) of the James V. Allred Unit. *App at 33-34.* Correctional Officer V Kara Painter began her shift at the Allred Unit Expansion Cell Block (ECB) on D-Pod at approximately 5:30am. *App at 34.* She was assigned to D-Pod with CO III Julio Varela. Upon arrival at D-Pod, she began her duties for the day which included the following: conducting count at 8:30am and 12:30pm (*App at 31, 33-34.*), escorting the pill nurse on her rounds to Cell 2-22 (*Id.*), feeding Cell 2-22 (Id.), picking up empty trays from Cell 222 (*Id.*) and opening the food slot of Cell 2-22 to give a hypocaloric snack at 11:55am. (*App at 75.*).

At approximately 1:00pm Defendant Painter and Officer Varela were relieved by Correctional Officer Daniel Smith and Defendant Correctional Officer Cheteigra Peterson. *App at 31.* Officer Smith conducted security checks at 1:17pm, and 3:17pm. A security check consists of correctional staff conducting an inspection of the physical premises of the housing area. *App at 44-46.* Officer Smith did not report anything unusual during either check. *App at 32.* Smith also fed the evening meal at 4:25pm, picked up the meal trays at 4:53pm and delivered a hypocaloric snack to cell 2-22 at 5:02pm. *Id.* Before exiting D-pod, Smith conducted a final security check at 6:06pm. *Id.*

At 6:26pm Inmate De La Garza calls Correctional Officer Dakota Schmidt to cell 2-22 and informs him that he (De La Garza) killed his cellmate (Oguntodu). Dakota Schmidt then initiates the Incident Command System ("ICS") summoning supervisors and emergency staff. *App at 31.*

In response to the ICS alert, Registered Nurse Franklin Lee arrived at cell 2-22 at 6:45pm and found Oguntodu non-responsive but with a faint pulse. *App at 22.* Later during the assessment

3

Nurse Lee was unable to locate a pulse and began administering CPR. *Id.* At 6:56pm, Emergency

Medical Services arrived and ceased life-saving efforts at 7:07pm. *App at 3*.

## IV.
## ISSUES OF LAW

1.  Whether Defendants Painter and Peterson are entitled to Qualified Immunity from
    Plaintiff's 42 U.S.C. § 1983 constitutional claim?

2.  Whether Defendants were deliberately indifferent to a serious risk of harm to Joseph
    Oguntodu from his cellmate in violation of his 8th Amendment Rights?

## V.
## ARGUMENT

### A.    Summary Judgment Standard

Motions for summary judgment are authorized by Rule 56 of the Federal Rules of Civil

Procedure.  These motions permit the court to resolve lawsuits without the necessity of trials if there

is no *genuine* dispute as to any material facts and the moving party is entitled to judgment as a matter

of law.[3]

Rule 56(e) of the Federal Rules of Civil Procedure provides in part:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denial of the adverse
> party's pleading, but the adverse party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts showing that there is a genuine
> issue for trial.  If the adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.[4]

Thus, when a motion for summary judgment is filed and is accompanied by competent

supporting evidence, a court may grant the motion if the opposing party fails to present

---

[3]  FED. R. CIV. P. 56(e); *Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1187 (5th Cir. 1991);
*Lodge Hall Music, Inc. v. Waco Wranglery Club, Inc.*, 831 F.2d 77, 79 (5th Cir. 1987).
[4] Rule 56(e), Federal Rules of Civil Procedure.

4

controverting evidence.[5]  Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *cert denied*, 506 U.S. 973 (1992); *Hans v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Federal summary judgment procedure requires the court to "pierce through the pleadings and their adroit craftsmanship to reach the substance of the claim." *Tacon Mechanical Contractors v. Aetna Casualty & Surety Co.*, 65 F.3d 486, 488 (5th Cir. 1995).

    In the usual case, the party who seeks summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson*, 477 U.S. at 250 n.4.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, they need not negate the essential elements of the nonmovants' case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Celotex Corp.*, 477 U.S. at 323.  To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the

---

[5] Rule 56(e) only requires the summary judgment nonmovant to submit affidavits and other summary judgment proof when the original motion is supported by <u>proper</u> affidavits or other summary judgment proof.  *See E.E.O.C. v. Brown & Root, Inc.*, 688 F.2d 338, 341 n.2 (5th Cir. 1982); *see also Orthopedic & Sports Injury Clinic v. Wang*, 922 F.2d 220, 225 (5th Cir. 1991), (holding that unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment).

nonmoving party's claim or defense. *Celotex Corp.*, 477 U.S. at 325; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

Once the moving party has carried his burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir. 1996); *Stults*, 76 F.3d at 656. The nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. *Celotex Corp.*, 477 U.S. at 324; *Stults*, 76 F.3d at 656; *Little*, 37 F.3d at 1075. Nonmovants are required to identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim. *Stults*, 76 F.3d at 656; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied sub nom, Forsyth v. Vines*, 513 U.S. 871 (1994). The Court cannot assume, in the absence of any proof, that the nonmoving party could or would prove the necessary facts. *McCallum Highlands v. Washington Capital DUS, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995); *and Little*, 37 F.3d at 1075.

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Where, as in the instant case, an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id.* The plaintiff bears the burden of negating qualified immunity and that burden is not satisfied through a mere showing of "some metaphysical doubt as to the material facts" or by "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Id.*; *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation marks and citation omitted). On summary

judgment, "the plaintiff can no longer rest on the pleadings and the court looks to the evidence before it." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

**B.    Qualified Immunity Standard**

Defendants were employed by TDCJ-CID at all times relevant to the allegations in Plaintiff's complaint. Defendants asserted their entitlement to qualified immunity in their answers and are entitled to the protections afforded by that affirmative defense.

Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). Qualified immunity is immunity from suit and not a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The qualified immunity analysis has two prongs, which can be taken in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The first prong asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right. *Tolan v Cotton*, 134 S. Ct. 1861, 1865 (2014). The second prong asks "whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). A right is clearly established if the law is clear in a particularized sense, such that a reasonable official would be put on notice that her

7

conduct is unlawful and violates the right in question. *Wernecke v. Garcia,* 591 F.3d 386, 392–93 (5th

Cir. 2009). The "clearly established law should not be defined at a high level of generality," but must

instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal

quotations omitted). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity

into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

*Id.* (internal quotations omitted).

    "If the defendant's actions violated a clearly established constitutional right, the court then

asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively

reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown*,

623 F.3d at 253. "In essence, a plaintiff must allege facts sufficient to demonstrate that no

reasonable officer could have believed his actions were proper." *Id.* Regardless of a defendant

official's mistaken assumptions, if his conduct is determined to have been objectively reasonable, he

is entitled to qualified immunity. *Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir. 1992) (citing

*Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993)); *Valencia v. Hicks*, 981 F.2d 1440, 1448 (5th Cir.)

*cert. denied*, 113 S.Ct. 2998 (1993); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Streetman v. Jordan*,

918 F.2d 555, 556 (5th Cir. 1990). Thus, officials are immune if their "actions could reasonably have

been thought consistent with the rights they are alleged to have violated." *Creighton*, 483 U.S. at 638.

"Each Government official, his or her title notwithstanding, is only liable for his or her own

misconduct" under Section 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

    In analyzing whether a defendant is entitled to qualified immunity, the first issue is whether

Plaintiff can survive summary judgment on his underlying constitutional claims. There are no

genuine issues of material fact concerning Plaintiff's constitutional claims under 42 U.S.C. § 1983 for

deliberate indifference as evidenced in this pleading. There is no evidence that Defendants were subjectively aware of and disregarded a risk to Oguntodu's safety. In fact, Defendants had no interaction with Oguntodu prior to March 7, 2019. For these reasons, Defendants' entitlement to qualified immunity is preserved and summary judgment should be granted in their favor.

I.    **There Are No Genuine Issues of Material Fact to Support Plaintiff's Deliberate Indifference Claim Under 42 U.S.C. § 1983.**

Deliberate indifference under the Eighth Amendment requires a showing of "subjective recklessness" as used in criminal law. *Farmer v. Brennan*, 511 U.S. 825 (1994). Under this standard, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835; *see also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999). "To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Hall v. Thomas,* 190 F.3d 693, 697 (5th Cir. 1999) (quoting *Farmer,* 511 U.S. at 834). The "applicable *mens rea* of deliberate indifference demands subjective knowledge of a substantial health risk." *Gobert v. Caldwell,* 463 F.3d 339, 348 (5th Cir. 2006). Thus, "[t]he deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the [officials] were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas Cnty.,* 286 F.3d 257, 262 (5th Cir. 2002). A defendant's conduct must rise "to the level of egregious conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Whether a prison official had the requisite knowledge of a substantial risk is a question of fact . . . and a factfinder may conclude that a

prison official knew of a substantial risk from the very fact that the risk was obvious. *Farmer*, 511 U.S. at 842. So, a prison official must show that he or she was "unaware even of an obvious risk to inmate health or safety." *Id.* at 844.

In addition to the above cited cases, Texas Federal District Courts and the Fifth Circuit have decided several cases that provide factual and substantive context for the allegations presented by Plaintiff in this case. More specially, *Thompson* and *Boyd* provide both persuasive and binding authority on the determination of whether a defendant is entitled to qualified immunity.

In *Thompson v. Campos,* No. 16-11121, 691 F. App'x 193 (5th Cir. 2017), an offender died tragically of a twisted small intestine, that became gangrenous, causing sepsis. The correctional staff responsible for observing Thompson were disciplined for failing to follow procedures concerning 15-minute checks. The district court held that the guards were entitled to qualified immunity because there were no facts showing the officers were aware of the medical issues suffered by Thompson. Each guard provided a sworn statement attesting that he or she saw nothing out of the ordinary in Thompson's appearance or behavior on the day of death. *Id.* at 3. While the court notes that the dereliction of duties was inexcusable, it was not enough to impart liability on these defendants. The same can be said for Defendants in this case.

In *Boyd*, the grandmother of decedent Terreth White, brought suit under 42 U.S.C. § 1983 alleging that several TDCJ officers and nursing staff were deliberately indifferent to White's health which resulted in his death. *Boyd v. Grooms*, Civil Action No. H-08-2371, 2009 U.S. Dist. LEXIS 89693, at *1 (S.D. Tex. Sept. 29, 2009). Prior to being incarcerated, White suffered from borderline mental retardation, seizures and schizoaffective disorder and was considered disabled. *Id.* at *3. The TDCJ staff, UTMB-Managed Care healthcare staff and other inmates knew that White suffered

10

from seizures. *Id.* at *4. When White suffered a seizure, he would collapse to the ground and lose consciousness for brief periods of time. *Id.*

On August 1, 2006, an inmate saw White suffer a significant seizure that resulted in him falling to the floor of his cell, unconscious. *Id.* at *5. Following the August 1st seizure, offenders housed on White's wing constantly advised defendants of White's condition and requested constant supervision and medical care, which the defendants refused to provide. *Id.* On August 4, 2006, White suffered 4 or 5 seizures in his cell while the defendants refused to provide medical care, even after several inmates continuously yelled for help. *Id.* at *6. Early in the morning of August 5, 2006, one guard expressed that something was wrong with White and tried to get help for him. *Id.* at *7. White was taken out of his cell to the medical unit for treatment, where it was determined that he had been dead for some time. *Id.* From August 1–5, 2006, White suffered several seizures while lying naked on his cell floor while officers provided no medical care. *Id.* at *6. Defendants moved for summary judgment on the basis of qualified immunity. *Id.* at *27. The Court held that it was possible that a reasonable juror could infer that defendants may have been aware that White was in imminent danger but that they nevertheless acted unreasonably (with deliberate indifference) and denied Defendants' Motion for Summary Judgment. *Boyd.* at *28-29.

   a. **Unlike the Defendants in *Boyd*, there is no competent summary judgment evidence that Defendants Painter or Peterson were subjectively aware of a serious risk to Oguntodu's health or safety under the deliberate indifference standard.**

In this case, Plaintiff claims that Defendants had actual knowledge of the serious risk of harm to Joseph Oguntodu and ignored the alleged risk, thereby constituting a reckless disregard and conscious deliberate indifference to his safety and well-being. This allegation, however, is not supported by the competent summary judgment evidence, and Defendants should be granted

11

summary judgment based on qualified immunity to Plaintiff's deliberate indifference claims.

Unlike the defendants in *Boyd*, the competent summary judgment evidence does not support the conclusion that either Defendant had the requisite subjective *mens rea* to impute liability under the deliberate indifference standard. Here, Joseph Oguntodu died from injuries suffered from an assault by another inmate. Contrary to Plaintiff's allegation, there are no indications within the record, that (prior to the discovery of Oguntodu' in his cell on March 7, 2019), Defendants were aware Oguntodu was suffering from threat of harm from another inmate.

Additionally, there are no indications that Oguntodu made any complaints of any kind regarding his cellmate or his health at any time prior to his discovery at 6:26pm on March 7, 2019. At approximately 5:30am, Defendant Painter started her duties on D-Pod. *App at 33-34*. She was unaware of any fights occurring between Oguntodu or his cellmate. *App at 51*. Each time she approached Cell 2-22, she received appropriate answers or saw activity which indicated to her, that nothing abnormal was happening inside. Painter observed Oguntodu several times throughout her 6-hour shift. *App at 66-67, 69-76*. Painter would not serve inmates their meals unless they complied with the rules, and she saw two people move. *Id*. Again, there was no indication, based on the summary judgment evidence, that Oguntodu made any complaint to TDCJ staff that he was at risk of harm, or in distress in any way during Painter's shift. There is no evidence that Painter was aware of any complaints made by Oguntodu. When she left the housing area at 12:56pm, Oguntodu was alive. It wasn't until other staff came onto the Pod to begin recreation that Oguntodu was discovered unresponsive.

These facts and conduct displayed by Defendants in this case are distinguishable from those presented in *Boyd*. Unlike the defendants in *Boyd*, who were constantly advised of White's status and

allowed him to sit in his cell for 4 days naked while having seizures without alerting the medical department, Defendant Painter was unfamiliar with Plaintiff prior to the evening he was discovered, and Peterson never stopped by the cell during her shift. Neither Defendant was aware of a serious risk of harm to Oguntodu by De La Garza, nor did either Defendant ignore an obvious risk to the health and safety of Oguntodu that would make them culpable under the deliberate indifference standard. There is no evidence in the EAC investigation into Oguntodu's death indicating that notice or warning of any type was given to any correctional staff who were present on D-Pod that day. *See Exhibit A*. Correctional officers Daniel Smith and Julio Varela also made several rounds by cell 2-22 and neither noticed anything unusual or out of the ordinary. *App at 32*.

There is no evidence that Defendant Peterson drew the subjective inference that Oguntodu was at any risk of harm. While her conduct as a correctional officer is not laudable, Peterson's reliance upon Officer Smith to conduct security rounds shields her from liability. According to CO Smith, Peterson refused to conduct security rounds in D-Pod because of the nature of the inmates. *App at* 5. While she did not conduct security rounds, Peterson did go by cell 2-22 once during her shift while escorting the pill nurse, but she did not interact with anyone in cell 2-22 at that time. As a result of her conduct, she could not have drawn the subjective inference that Oguntodu was in danger. Peterson's conduct resembles that of the Officers in *Thompson v. Campos*. At most Peterson was negligent and that is not enough to maintain a constitutional claim. As such, there are no genuine issues of material fact and Defendant Peterson's motion for summary judgment based on qualified immunity should be granted.

Plaintiff will likely argue that Defendants Painter and Peterson's disciplinary record from this incident shows that their failure to follow TDCJ policy should subject them to liability under the

deliberate indifference standard. This argument is equally ineffectual. In support of this argument, Plaintiff will likely point to the fact that several employees including Defendant Painter and Peterson, were disciplined for various violations of TDCJ's policies after the investigation into Ogntodu's death. The fact that the Defendants may have violated an internal policy, standing alone, is insufficient to prove they violated Oguntodu' constitutional rights by being deliberately indifferent to a serious risk of harm.[6] Further, Plaintiff's "failure to follow policy" argument is grounded in the tenuous theory of what Defendants "should have done" in order to prevent Oguntodu' death. This argument, however, runs contrary to the law and is unsupported.

Peterson did not observe Oguntodu at any point during her shift, as such there is no way she developed the required *mens rea* to be deliberately indifferent. Although the argument seems counterintuitive, the fact that Defendant Peterson did not conduct her duties as required by doing security checks, further supports the conclusion that she could not have developed the required subjective intent to be deliberately indifferent to a serious risk of harm to Oguntodu. For Defendant Peterson to be liable under a theory of deliberate indifference, she would have to had observed Oguntodu, seen that he was in serious distress, concluded that he was in serious distress, *and* then chosen to ignore that distress. That simply is not present here. There is no summary judgment evidence that shows Defendants knew Oguntodu was at risk of any harm on March 7, 2019. At worst, Defendant Peterson's failure to conduct proper cell counts or cell checks amounts

---

[6] Allegations that TDCJ-ID officials did not follow TDCJ-ID policy have no basis in law; the law does not recognize a right for damages for prison officials' negligent or even grossly negligent failure to follow prison policy or failure to enforce rules applicable to the inmates. *Thompson v.* TDCJ-ID, 33 S.W.3d 412, 415 (Tex. App.—Houston [1st Dist.] 2000); *Hector v. Thaler*, 927 S.W.2d 95, 97-98 (Tex. App.—Houston [1st Dist.] 1996, writ denied). An accusation that officials failed to follow their own regulations does not state a claim under § 1983. *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989); *Hernandez v. Estelle*, 788 F.2d 1154 (5th Cir. 1986).

to negligence,[7] but certainly not deliberate indifference.

As supported by *Domino*, any counter-argument premised on Plaintiff's assertion (or even evidence) that Defendant Peterson should have known about the risk to Oguntodu by De La Garza should fail. The argument that Defendant Peterson "faile[d] to alleviate a significant risk that [they] should have perceived, but did not, is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756. Ultimately, Defendant Peterson was not aware of Oguntodu and De La Garza and therefore did not develop the requisite subjective intent to impute liability under the deliberate indifference standard. Accordingly, her motion for summary judgment should be granted.

With respect to Painter, while Plaintiff will likely argue that she should have perceived such a significant risk, because she did observe Oguntodu during her shift, that argument is still insufficient to establish deliberate indifference. Painter performed her duties and observed Oguntodu several times throughout her shift. Assuming arguendo that Oguntodu was not dead during Painter's shift, he did not make any complaint or warn her of any risk to his safety by his cellmate. At no point did Painter, throughout her shift, note anything out of the ordinary for cell 2-22. Painter could not have developed the required *mens rea* to be deliberately indifferent.

Plaintiff cannot successfully argue both that Painter and Peterson were deliberately indifferent because Oguntodu was allegedly at risk of harm during both shifts. Assuming arguendo that Oguntodu was alive during Painter's shift, he did not make her aware of any reason to believe

---

[7] In *Stewart*, Appellee Dr. Dial admitted Stewart to the prison hospital on 18 August 1994 to treat grossly swollen legs, which can be indicative of congestive heart failure. After treating this condition for five days, Dr. Dial discharged Stewart to a disability unit. The next day, Dr. Dial was advised that Stewart had a large decubitus ulcer on his lower back. Dr. Dial ordered treatment of the ulcer by cleaning the area with Betadine, applying sugardyne dressing, and placing Stewart on the next sick call. The Fifth Circuit held that even though Dr. Dial treated Stewart for 5 days and didn't notice the ulcers that ultimately killed him, at worst, any failure by Dr. Dial to discover the ulcer earlier, to read the nurses' notes indicating Stewart's

he was at risk of harm before she left the unit that day. If he was not alive during Peterson's shift, at no point did she observe Oguntodu during her shift, and she could not have known a risk of harm existed. While Plaintiff may attempt to argue that Defendants are simultaneously deliberate indifferent both for doing security rounds, and for not, as evidenced above, the argument does not rise to that of constitutional violation.

In total, the competent summary judgment evidence supports the conclusion that Defendants Painter and Peterson were not deliberately indifferent to a serious risk of harm from another offender. Accordingly, Defendants' motion for summary judgment based on qualified immunity should be granted and all claims against them should be dismissed.

## VI.
## CONCLUSION

ACCORDINGLY, Defendants Painter and Peterson present their motion for summary judgment based upon qualified immunity. Defendants request that judgment be granted in their favor and that all claims brought against them be dismissed.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

---

incontinence or mobility problems, or to follow-up to ensure that his orders were carried out might constitute negligence, not the requisite deliberate indifference. *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999).

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ BRUCE R. GARCIA*
**BRUCE R. GARCIA**
Assistant Attorney General
Attorney-in-charge
State Bar No. 07631060
Bruce.Garcia@oag.texas.gov

**ATTORNEY FOR DEFENDANTS**
**Kara Painter and Cheteigra Peterson**


## NOTICE OF ELECTRONIC FILING

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing **Defendants Brief in Support of Motion for Summary Judgment** to the Court, on March 1, 2023, in the Northern District of Texas, Wichita Falls Division.

*/s/ BRUCE R. GARCIA*
**BRUCE R. GARCIA**
Assistant Attorney General

17

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendants Brief in Support of Motion for Summary Judgment** has been served via the following on March 1, 2023, to all counsel of record.

*/s/ BRUCE R. GARCIA*
**BRUCE R. GARCIA**
Assistant Attorney General

18